IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

Brian Wilson,                          )    Civil Action No.:2:11-02672-MBS-BHH
                                       )
                    Petitioner,        )
                                       )    **REPORT AND RECOMMENDATION**
        v.                             )    **OF MAGISTRATE JUDGE**
                                       )
Leroy Cartledge,                       )
                                       )
                    Respondent.        )

        The Petitioner, a state prisoner, seeks habeas relief pursuant to 28 U.S.C. § 2254.

This matter is before the Court on the Respondent's Motion for Summary Judgment.  (Dkt.

No. 11; see also Dkt. No. 10.)

        Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and

Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review the instant

petition for relief and submit findings and recommendations to the District Court.

        The Petitioner brought this habeas action on or about September 28, 2011. (Dkt. No.

1.) On December 9, 2011, the Respondent moved for summary judgment (Dkt. No. 11; see

also Dkt. No. 10.) By order filed December 9, 2011, pursuant to Roseboro v. Garrison, 528

F.2d 309 (4th Cir. 1975), the Petitioner was advised of the summary judgment dismissal

procedure and the possible consequences if he failed to adequately respond to the motion.

(Dkt. No. 12.)  Petitioner filed his Response in Opposition on or about January 19, 2012.

(Dkt. No. 17.)

## PROCEDURAL HISTORY

        The Petitioner is currently confined at the McCormick Correctional Institution ("MCI").

Petitioner was indicted by the Spartanburg County Grand Jury for murder in October of

2006. (See Dkt. No. 10-1 at 95 of 96.) On January 8, 2007, Petitioner, who was represented

by Thomas Boggs, Esquire, pled guilty to murder before the Honorable J. Derham Cole.

(See Dkt. No. 10-1 at 3-44 of 96.) Petitioner was sentenced to a period of confinement of forty years. (Id. at 43.)

Petitioner did not file a direct appeal. However, on or about August 13, 2007, he filed an Application for Post-Conviction Relief ("PCR"). (See Dkt. No. 10-2.) The following questions and answers appeared on his application:

9. State concisely the grounds on which you base your allegation that you are being held in custody unlawfully.

Ineffective assistance of counsel for failure to file my notice of appeal. Counsel ineffective for request for lesser included offense for murder.

10. State concisely and in the same order the facts which support each of the grounds set out in (9).

Counsel lied about my charged being reduced from murder to manslaughter. Counsel informed my father and mother that he had filed a notice of appeal on my behalf.

(Dkt. No. 10-2 at 2 of 5.)

On or about February 26, 2008, Petitioner filed a "Brief in Support of Application for Post-Conviction Relief." (Dkt. No. 10-4.) In that brief, Petitioner contended his plea was involuntary because (a) counsel "assured" Petitioner "that by pleading guilty his charge of murder would be reduced to manslaughter by the solicitor's office," and (b) counsel "never informed [Petitioner] of the specific element of intent required to convict [Petitioner] had he elected to go to trial." (Id. at 1 of 3.) Petitioner also stated that he sought "the papers and effects that were presented to the grand jury to obtain the indictment against him" and that he was being denied "fundamental fairness" because his attorney "is not willing to raise all the issues [Petitioner] would like to have addressed by the Court." (Id. at 2-3.)

On or about March 26, 2008, Petitioner filed a "Motion to Remove Counsel," seeking to remove his PCR counsel. (See Dkt. No. 10-3.) Petitioner contended that his counsel had failed to "come and visit applicant and sit down to go over his application" and that counsel "refused to amend or raise the issues applicant wishes to have addressed at the PCR hearing." (Id. at 1 of 2.) Petitioner also filed a Motion for Continuance wherein he asked the PCR court to continue his PCR hearing. (See id. at 2.) This motion was based on Petitioner's assertion that the State had failed to produce the grand jury impanelment records and that he had "not had any opportunities to speak with counsel regarding his PCR." (Id.)

On April 9, 2008, an evidentiary hearing was held before the Honorable Kenneth G. Goode. (Dkt. No. 10-1 at 52-85 of 96.) Petitioner was present and represented by Kenneth P. Shabel, Esquire. (Id. at 52.) In an order dated May 30, 2008, Judge Goode denied the application for post-conviction relief and dismissed the petition. (Dkt. No. 10-5.) Petitioner appealed the denial of his application for PCR. (See Dkt. No. 10-6.)[1]

On March 12, 2010, Robert M. Pachak, Esquire, of the South Carolina Commission on Indigent Defense, filed a Johnson petition for writ of certiorari.[2] The issue presented therein was whether Petitioner's "guilty plea was entered voluntarily and intelligently." (Dkt. No. 10-7.) Mr. Pachak also filed a petition to be relieved as counsel. (Dkt. No. 10-7 at 7 of 8.) On or about April 12, 2010, Petitioner filed a *pro se* response to the Johnson petition wherein he raised four issues (verbatim):

---

[1] On July 8, 2008, Respondent moved to remand the case to Judge Goode to correct a clerical error regarding the identification of Petitioner's PCR counsel. (Dkt. No. 10-1 at 86-87 of 96.) Thereafter, on April 22, 2009, Judge Goode entered an Amended Order of Dismissal. (Dkt. No. 10-1 at 89-94 of 96.) The amended order simply changed the name of Petitioner's PCR counsel. (See id.)

[2] Johnson v. State, 294 S.C. 310, 364 S.E.2d 201 (1988).

I. Counsel was ineffective for advising defendant of his charge being reduced from murder to manslaughter. The letter petitioner received from respondent's witness specifically states that he is responding to a letter first received by petitioner.

II. Whether petitioner's guilty plea was intelligently and voluntarily entered?

III. Whether the mischaracterization of grand jury impanelment records issue by PCR counsel denied appellant of his "fair bite of the apple" on the claim of grand jury presentment papers and effects.

IV. Whether a new PCR hearing is required where PCR court did not give finding of facts and conclusions of law on issue of entitlement to papers and effects involving grand jury. . . .

(See Dkt. No. 10-10.) The Supreme Court of South Carolina entered an order denying the petition on June 24, 2011. (Dkt. No. 10-11.) The matter was remitted to the lower court on July 12, 2011. (Dkt. No. 10-12.)

Petitioner filed a second application for PCR on or about January 26, 2010. (See Dkt. No. 10-13.) The following questions and answers appeared on his second application:

9. State concisely the grounds on which you base your allegation that you are being held in custody unlawfully.

Denied "fair bite of apple" by PCR counsel['s] failure to preserve evidence for the record.

10. State concisely and in the same order the facts which support each of the grounds set out in (9).

Counsel failed to preserve evidence of guilty plea being involuntary because of trial counsel informing applicant of murder charge being reduced to manslaughter.

(Dkt. No. 10-13 at 2-3 of 6.) Shortly thereafter–on or about May 27, 2010–Petitioner filed a third application for PCR. (See Dkt. No. 10-14.) In his memorandum in support of his third application, Petitioner argued that he was "mentally incompetent at the time of the murder in 2005 and at the time of the guilty plea in 2007." (Dkt. No. 10-14 at 11 of 13.) Petitioner further contended that his counsel was ineffective in failing to investigate and retrieve

4

Petitioner's medical records and for failing to request a mental examination. (Id. at 11-13.)[3] The State filed a motion to consolidate the two PCR applications; the this motion was granted and the two applications were merged on November 9, 2010. (See Dkt. No. 10-15; Dkt. No. 10-16.)

On February 16, 2011, the Honorable Mark Hayes entered a Conditional Order of Dismissal. (See Dkt. No. 10-18.) Judge Hayes concluded that the application should be "summarily dismissed for failure to file within the time mandated by statute and because it is successive to his previous application." (Id. at 5 of 6.) On August 26, 2011, Judge Hayes entered a Final Order denying the application for PCR and dismissing it with prejudice for the reasons set forth in the Conditional Order of Dismissal. (See Dkt. No. 10-22 at 3-4 of 7.)

As Respondent notes in his memorandum, it appears that Petitioner has since filed a Petition for Writ of Mandamus with the Spartanburg County Clerk of Court. (See Dkt. No. 10-23.)

Petitioner filed the instant habeas action raising the following grounds for review (verbatim):

> **Ground One**: Counsel was ineffective for advising defendant of his charge being reduced from murder to manslaughter.
> **Supporting Facts**: Prior to entering my guilty plea, I was assured by counsel that I would be pleading guilty to manslaughter. Counsel mailed a letter also stating that my charge was successfully reduce[d] from murder to manslaughter.
>
> **Ground Two:** Whether Petitioner's guilty plea was entered intelligently and voluntarily?
> **Supporting Facts**: Petitioner contended to counsel that he wanted a jury trial. Counsel never informed defendant of the specific element of intent required to convict him had he elected to go to trial.

---

[3]In response to the question about why he did not appeal from the judgment of conviction or the imposition of sentence, Petitioner stated, "Lawyer failed to file notice of appeal." (Dkt. No. 10-14 at 2 of 13.)

**Ground Three**: Whether the mischaracterization of grand jury impanelment documents denied me my "full bite of the apple" on claim of grand jury impanelment documents?
**Supporting Facts**: Prior to my evidentiary hearing, I submitted a brief in support of my PCR application. Within this brief I requested my grand jury impanelment documents.

**Ground Four**: Whether a new PCR hearing is required where PCR court did not give findings of fact and conclusion of law on issue of entitlement to papers and effects involving grand jury?
**Supporting Facts**: I specifically submitted a brief in support of my PCR application requesting the production of my entitlement to papers and effect[s] involving grand jury impanelment documents.

(Dkt. No. 1.) Petitioner also filed a Memorandum "Supporting Habeas Corpus Petition Under 28 U.S.C. 2254." (Dkt. No. 1-1.)

## APPLICABLE LAW

### Summary Judgment Standard

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party."  The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" Id. (quoting Hunt v. Cromartie, 526 U.S. 541, 552 (1999)); see also Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990).

**Habeas Standard of Review**

Since the Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. Lindh v. Murphy, 521 U.S. 320, 322-23 (1997); Breard v. Pruett, 134 F.3d 615, 618 (4th Cir.1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication:

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> 2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceeding.

28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, 529 U.S. at 410.

**Exhaustion and Procedural Bar**

Exhaustion and procedural bypass are separate theories which operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. The two theories rely on the same rationale. The general rule is that a petitioner must present his claim to the highest state court with authority to decide the issue before the federal court will consider the claim.

A.  Exhaustion

The theory of exhaustion is based on the statute giving the federal court jurisdiction of habeas petitions. Applications for writs of habeas corpus are governed by 28 U.S.C. §

2254, which allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States." The statute states in part:

> (b) (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that
>
>> (A) the applicant has exhausted the remedies available in the courts of the State; or
>>
>> (B) (i) there is either an absence of available State corrective process; or
>>
>> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state courts before seeking relief in the federal court. When subsections (b) and (c) are read in conjunction, it is clear that § 2254 requires a petitioner to present any claim he has to the state courts before he can proceed on the claim in this court. The United States Supreme Court has consistently enforced the exhaustion requirement.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first avenue is through a direct appeal and, pursuant to state law, he is required to state all his grounds in that appeal. SCAR 201; SCAR 207; SCAR 208; Blakeley v. Rabon, 266 S.C. 68, 221 S.E.2d 767 (1976). The second avenue of relief

8

is by filing an application for PCR. S.C. CODE ANN. § 17-27-10 et seq. A PCR applicant is also required to state all of his grounds for relief in his application. S.C. CODE ANN. § 17-27-90. A PCR applicant cannot assert claims on collateral attack which could have been raised on direct appeal. Simmons v. State, 264 S.C. 417, 215 S.E.2d 883 (1975). Strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. CODE ANN. § 17-27-45.

When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim. If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts. Patterson v. Leeke, 556 F.2d 1168 (4th Cir. 1977); Richardson v. Turner, 716 F.2d 1059 (4th Cir. 1983).

B. Procedural Bypass

Procedural bypass is the doctrine applied when the person seeking relief failed to raise the claim at the appropriate time in state court and has no further means of bringing that issue before the state courts. If this occurs, the person is procedurally barred from raising the issue in his federal habeas petition. The United States Supreme Court has clearly stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. Smith v. Murray, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion. The two routes of appeal in South Carolina are described above, (i.e., direct appeal, appeal from PCR denial) and the South Carolina Supreme Court will refuse to consider claims

9

raised in a second appeal which could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. State procedural rules promote

> not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

Reed v. Ross, 468 U.S. 1, 10-11 (1984).

If a federal habeas petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim. Where a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. Murray v. Carrier, 477 U.S. 478, 496 (1986).

C. Inter-relation of Exhaustion and Procedural Bypass

As a practical matter, if a petitioner before this court has failed to raise a claim in state court, and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. Matthews v. Evatt, 105 F.3d 907 (4th Cir. 1997)(citing Coleman v. Thompson, 501 U.S. 722, 735 n. 1 (1991); Teague v. Lane, 489 U.S. 288,297-98 (1989); and George v. Angelone, 100 F.3d 353,363 (4th Cir. 1996)).

<u>D. Cause and Actual Prejudice</u>

The requirement of exhaustion is not jurisdictional and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances. <u>Granberry v. Greer</u>, 481 U.S. 129, 131 (1987). In order to have such claims considered, a petitioner must show sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, <u>Coleman</u>, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. <u>Murray</u>, 477 U.S. 478. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, demonstrate the novelty of a particular claim, or show interference by state officials. <u>Id</u>.

Absent a showing of "cause," the court is not required to consider "actual prejudice." <u>Turner v. Jabe</u>, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. <u>Murray</u>, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. He is required to prove that specific errors infected the trial and were of constitutional dimensions. <u>United States v. Frady</u>, 456 U.S. 152 (1982).

## **DISCUSSION**

Respondent moved for summary judgment on all of Petitioner's grounds for relief. (<u>See</u> Dkt. No. 11; Dkt. No. 10.) The undersigned will address all of Petitioner's grounds in turn.

## **A. Ground One**

As noted above, Petitioner contends in Ground One that his counsel was ineffective for advising Petitioner that his charge had been reduced from murder to manslaughter. (<u>See</u> Dkt. No. 1 at 5 of 17.) Petitioner asserts that prior to entering his plea, he was "assured by counsel" that he "would be pleading guilty to manslaughter." (<u>Id</u>.) Respondent seeks

summary judgment on Ground One because Petitioner "fails to show that the PCR Court made an unreasonable determination of the facts in denying relief upon this claim of ineffective assistance of counsel" and "fails to show the PCR Court unreasonably applied federal law in denying relief upon this claim." (Dkt. No. 10 at 23.) Although Petitioner filed a Response in Opposition, his response does not address Ground One. (See Dkt. No. 17.)

Strickland v. Washington, 466 U.S. 668 (1984), states that a meritorious ineffective assistance of counsel claim must demonstrate two things: first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the defense. Id. at 687–96. A court's evaluation of counsel's performance under this standard must be "highly deferential," so as to not "second-guess" the performance. Id. at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. Id. (internal quotation marks and citation omitted); see also Bowie v. Branker, 512 F.3d 112, 119 n.8 (4th Cir. 2008); Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1297–99 (4th Cir. 1992); Roach v. Martin, 757 F.2d 1463, 1467 (4th Cir. 1985). In order to establish the second prong of Strickland, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. A "reasonable probability" has been defined as "a probability sufficient to undermine confidence in the outcome." Id.

The two-part test enunciated in Strickland applies to challenges to guilty pleas based on ineffective assistance of counsel. See Hilll v. Lockhart, 474 U.S. 52, 58 (1985). "[I]n order to satisfy the 'prejudice' requirement [set forth in Strickland], the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59.

In the PCR court's Amended Order of Dismissal, Judge Goode noted the following testimony related to this ground:

> At the PCR evidentiary hearing the Applicant testified that counsel was ineffective for failing to inform the Applicant that the charges were murder rather than manslaughter. The trial counsel acknowledged that a letter intended for another defendant regarding manslaughter charges was inadvertently mailed to the Applicant. Regardless, trial counsel testified that he clearly explained to the Applicant that the charges were murder. The trial counsel said that upon first speaking with the Applicant, they had discussed the possibility that the charge could be mitigated to manslaughter. However, after trial counsel fully investigated the case, he felt that manslaughter would be highly unlikely. Instead, trial counsel felt that various aspects of the crime may lead to the solicitor seeking the death penalty. Thus, by the time the Applicant pled, trial counsel had determined that manslaughter was not an option and he informed his client of such. Additionally, the guilty plea transcript clearly reflects that the charges of murder were announced before the Applicant's plea.

(Dkt. No. 10-1 at 90 of 96.) After noting the law set forth in <u>Strickland</u> and <u>Hill</u>, the PCR order further states,

> This Court finds trial counsel's testimony to be credible and the Applicant's to be not credible.
> This Court finds that counsel was not ineffective for failing to advise the Applicant that the charges were murder. This Court finds counsel's testimony to be credible. Counsel did advise the Applicant that he was pleading to murder. Additionally, the charge of murder was announced in open court prior to the Applicant's guilty plea. This Court denies and dismisses this allegation.

(<u>Id</u>. at 93.)

The PCR court's determination of this issue is not contrary to, or an unreasonable application of, clearly established federal law; nor does it involve an unreasonable determination of the facts. The PCR court found that the testimony of Petitioner's counsel was credible but that the testimony of Petitioner was not credible. In fact, the PCR court specifically found that Petitioner's counsel "*did advise the Applicant that he was pleading to murder.*" (<u>Id</u>. (emphasis added).) These factual findings on credibility are "presumed to be correct"; Petitioner has the "burden of rebutting the presumption by clear and convincing

13

evidence." 28 U.S.C. § 2254(e)(1); see also Wilson v. Ozmint, 352 F.3d 847, 858 (4th Cir. 2003). Petitioner has not met this burden. Furthermore, as the PCR judge noted, the transcript of the plea hearing clearly reveals that Petitioner pled guilty to murder. Because Petitioner has not met the standard for relief set forth in § 2254, the undersigned recommends granting summary judgment to Respondent on Ground One. See Pickett v. Warden, C.A. No. 4:09-cv-01481-PMD, 2010 WL 670103, at *3, 5 (D.S.C. Feb. 22, 2010) (rejecting claim of ineffective assistance of plea counsel in § 2254 case where petitioner contended counsel was ineffective for "failing to let him know that his charge had been changed from conspiracy to traffic 500 grams of crack to trafficking" because, *inter alia*, the "plea judge explicitly put Petitioner on notice of the charges against him and the possible penalties"); Green v. Knowlin, C.A. No. 0:09-cv-00840-RBH, 2010 WL 569572, at *3-4 (D.S.C. Feb. 11, 2010) (rejecting claim that counsel was "ineffective in failing to object to an alleged breach of the plea agreement when [the petitioner] pled guilty to trafficking 'second offense' instead of 'first offense'" because "[a] review of the plea transcript reveals that the Petitioner explicitly acknowledged that he was pleading guilty to trafficking crack cocaine between 10 and 28 grams as a second offense and, further, that he was aware he would be required to serve between five and thirty years for his crime").

## B.    Ground Two

Petitioner claims in Ground Two that his guilty plea was not voluntary and intelligent. (See Dkt. No. 1.) Petitioner states, "Petitioner contended to counsel that he wanted a jury trial. Counsel never informed defendant of the specific element of intent required to convict him had he elected to go to trial." (Id.) Respondent asserts he is entitled to summary judgment on this ground because it is procedurally barred, and because this "claim for relief . . . is not supported by the record." (See Dkt. No. 10 at 19-21, 26 of 30.) In his Response in Opposition, Petitioner contends that Ground Two "was not procedurally defaulted in state

court[] because this Ground Two was addressed [in the] <u>Johnson</u> petition for writ of certiorari by his appellate defense counsel." (Dkt. No. 17 at 2 of 6.) Petitioner also appears to contend his sentence should have been thirty years, not forty years. (<u>Id</u>. at 2-3.)

In his first application for PCR, Petitioner filed a "Brief in Support of Application for Post-Conviction Relief" wherein Petitioner contended that his plea was involuntary because counsel "never informed [Petitioner] of the specific element of intent required to convict [Petitioner] had he elected to go to trial." (Dkt. No. 10-4 at 1 of 3.) In addition, as Petitioner notes in his Response, the issue of an involuntary plea was raised in his <u>Johnson</u> petition. (<u>See</u> Dkt. No. 10-7.)

In addressing this claim, the PCR court stated,

> The Applicant . . . claimed that he wanted a trial and his guilty plea had been involuntary. Trial counsel testified that he prepared for trial and that the Applicant made the decision to plea. The Applicant also testified at his PCR hearing that he did not commit the crime. Despite this PCR testimony, the Applicant confirmed that he admitted guilt at the guilty plea. Further, trial counsel said that the Applicant had admitted guilt to him throughout the course of their case preparation.
>
> . . . .
>
> This Court finds trial counsel's testimony to be credible and the Applicant's to be not credible.
>
> . . . .
>
> This Court finds that counsel was not ineffective for forcing the Applicant to plead guilty. This Court finds trial counsel's testimony regarding the Applicant's decision to plead to be credible. Trial counsel did not force the Applicant to plead. This Court denies and dismisses this allegation.
>
> . . . .
>
> As to any and all allegations that were or could have been raised in the application or at the hearing in this matter, but were not specifically addressed in this order, the Court finds that the Applicant failed to present any probative evidence regarding such allegations. Accordingly, this Court finds that the Applicant waived such allegations and failed to meet his burden of proof

regarding them. Accordingly, they are denied and dismissed without prejudice.

(Dkt. No. 10-1 at 91-93 of 96.)

Although Petitioner raised the issue of an involuntary guilty plea in his "Brief in Support of Application for Post-Conviction Relief," the PCR court did not specifically address whether Petitioner's guilty plea was involuntary; instead, the PCR court's rulings were on the claims of ineffective assistance of counsel. (See Dkt. No. 10-1 at 93-94 of 96.) The PCR judge did indicate that "any and all allegations that were . . . raised in the application or at the hearing . . . but were not specifically addressed" in his order were rejected because Petitioner "failed to present any probative evidence regarding such allegations." (Dkt. No. 10-1 at 93.) However, the Supreme Court of South Carolina has concluded that such a statement "does not constitute a sufficient ruling on any issue[] since it does not set forth specific findings of fact and conclusions of law." Marlar v. State, 375 S.C. 407, 409, 653 S.E.2d 266, 266-67 (2007). Accordingly, the claim for relief in Ground Two is procedurally barred. See Montgomery v. Bodison, C.A. No. 6:09-778-HMH-WMC, 2010 WL 297667, at *4 (D.S.C. Jan 20, 2010) (although petitioner raised some claims in his petition, they were procedurally barred because the PCR court did not rule on them, and petitioner did not file a Rule 59(e) motion); Cleofas v. South Carolina, C.A. No. 3:08-2861-RBH, 2009 WL 2182152, at *5 (D.S.C. July 20, 2009) (concluding a claim of ineffective assistance of counsel was procedurally barred even though the petitioner asserted the claim in his PCR application because he offered no proof of the claim at the PCR hearing, and it was not addressed by the PCR court).

Even if this claim were not procedurally barred, Petitioner would not be entitled to relief. "A guilty plea . . . is valid only if done voluntarily, knowingly, and intelligently, 'with sufficient awareness of the relevant circumstances and likely consequences.'" Bradshaw

16

v. Stumpf, 545 U.S. 175, 183 (2005) (quoting Brady v. United States, 397 U.S. 742, 748 (1970)). As the Supreme Court stated in Hill v. Lockhart, "[t]he longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" Hill v. Lockhart, 474 U.S. 52, 56 (1985) (quoting North Carolina v. Alford, 400 U.S. 25, 31 (1970)). "In evaluating the constitutional validity of a guilty plea, 'courts look to the totality of the circumstances surrounding [it], granting the defendant's solemn declaration of guilt a presumption of truthfulness.'" Unites States v. Moussaoui, 591 F.3d 263, 278 (4th Cir. 2010) (quoting Walton v. Angelone, 321 F.3d 442, 462 (4th Cir. 2003)).

During the plea colloquy, Petitioner indicated he "had plenty of time and opportunity" to discuss with his counsel the nature of the charge against him as well as the consequences of being found guilty. (Dkt. No. 10-1 at 5 of 96.) Petitioner also stated that his counsel "explain[ed] . . . the potential sentence that could be imposed if [Petitioner] were found guilty of murder." (Id. at 5-6.) The following exchange occurred:

> THE COURT: The indictment, that is Indictment 2006-3915, alleges that you did on or about July the 3rd or July the 4th of 2005 wilfully and with malice aforethought kill one Latonya Jones by striking her about the head with a golf club and/or strangling her and that she died as a proximate result of those acts committed by you against her.
>
> If those allegations, if those facts, are proven, that would establish the crime of murder. And if you were convicted **or if you plead guilty to the crime of murder** you can receive a sentence of **not less than 30 years in jail, but you could receive a sentence of up to life imprisonment**.
> . . .
> If you were to receive a sentence of anything less than life, it must be **at least** 30 years, but it could be some other term **in excess of 30 years up to life in prison**.
> . . .
> Now, has Mr. Boggs **explained to you what the state would have to prove in court** before you could be convicted or found guilty of the crime of murder?
>
> THE DEFENDANT: Yes, sir.
> . . .

17

THE COURT: And he's **explained to you what would have to be proven before a person such as you could be found guilty of the crime of murder**?

THE DEFENDANT: Yes, sir.

(Dkt. No. 10-1 at 6-7 of 96 (emphasis added).) In addition, Petitioner indicated he understood the following rights but wished to give them up in order to plead guilty: the right to remain silent, the right to confront witnesses against him, and the right to a jury trial (Id. at 8-12.) Petitioner stated that he was "pleading guilty freely and voluntarily" and that it was his "decision, and [his] decision alone, to plead guilty to this charge of murder." (Id. at 12.) Judge Cole also explained to Petitioner that he had the right to challenge–before trial–the admissibility of the statement he made to police, but that "when you plead guilty you give up your right to contest the seizure or the use of any evidence that you contend was illegally obtained." (Id. at 21-27.) After consultation with his attorney, Petitioner indicated he wished to waive the Jackson v. Denno hearing and plead guilty. (Id. at 27-31.)

Although Petitioner testified at his PCR hearing that he does not "believe that [his] guilty plea was given voluntarily," and that his attorney told him the "only strategy was to take a plea" in light of the statement given to police, his attorney testified that Petitioner was "the one who told me [(the attorney)] the weekend before the trial that he was gonna plead guilty." (Dkt. No. 10-1 at 57, 62, 72 of 96.) When the attorney was asked whether he coerced Petitioner into pleading guilty, the attorney stated, "I–it wasn't until Saturday before the trial January 8th when I received a call from his father that I knew for sure he was gonna plead." (Id. at 75.) The PCR judge specifically found trial counsel's testimony to be credible and Petitioner's testimony not credible. (Dkt. No. 10-1 at 93 of 96.) As noted above, the PCR judge's order states,

> This Court finds that counsel was not ineffective for forcing the Applicant to plead guilty. This Court finds trial counsel's testimony regarding

the Applicant's decision to plead to be credible. Trial counsel did not force the Applicant to plead. This Court denies and dismisses this allegation.

(Id.)

Aside from Wilson's allegations that his plea was involuntary, there is no evidence that his plea was in fact involuntary. On the contrary, the plea colloquy reveals that his plea was voluntary: it reveals that he had sufficient time to consult with his attorney, he knew that he was waiving the right to continue with his jury trial, and he had not been promised anything in order to plead guilty. Petitioner's claim that his plea was involuntary is therefore without merit. See United States v. Solomon, 106 Fed. App'x 170, 171 (4th Cir.2004); United States v. Robinson, 82 Fed. App'x 322, 323 (4th Cir.2003) ("Robinson's plea colloquy reveals that his plea was knowingly and voluntarily entered into."); United States v. DeFusco, 949 F.2d 114, 119-20 (4th Cir.1991); see also Ridgeway v. Stevenson, No. 3:10-490-RBH, 2011 WL 666124, at *6-7 (D.S.C. Feb. 11, 2011) (rejecting the petitioner's claim that there was a violation of Boykin v. Alabama, 395 U.S. 238 (1969), where the petitioner contended that "there [was] no evidence that anyone, neither trial counsel nor the court, even explained to petitioner the actual elements of the charged offenses prior to accepting petitioner's guilty plea" because, *inter alia*, while "the plea is invalid" where "a defendant pleads guilty to a crime without having been informed of the crime's elements," "the United States Supreme Court has never held that the judge himself must explain the elements of each charge to the defendant on the record"). The undersigned recommends granting summary judgment to Respondent on Ground Two.

## C.  Ground Three and Ground Four

In Ground Three, Petitioner contends that the "mischaracterization of grand jury impanelment documents denied [him his] 'full bite of the apple' on claim of grand jury impanelment documents." (See Dkt. No. 1.) In Ground Four, Petitioner contends that a new PCR hearing is required "where [the] PCR court did not give findings of fact and

19

conclusion[s] of law on [the] issue of entitlement to papers and effects involving [the] grand jury." (Id.) Respondent moved for summary judgment on Ground Three and Ground Four, contending that these claims "fail[] to state a claim upon which federal habeas relief can be granted" because "alleged infirmities in a state post-conviction action are not matters that may be addressed in federal habeas actions." (Dkt. No. 10 at 28-29.)

The undersigned agrees with Respondent. Alleged defects in state PCR proceedings are not cognizable in a federal habeas action. See Bryant v. Maryland, 848 F.2d 492, 493 (4th Cir. 1988) (holding that errors in state PCR proceedings are not cognizable on federal habeas review); see also 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."). Accordingly, the undersigned recommends granting summary judgment to Respondent on Ground Three and Ground Four.

**CONCLUSION**

It is therefore RECOMMENDED, for the foregoing reasons, that Respondent's Motion for Summary Judgment (Dkt. No. 11) be GRANTED; and the Petitioner's habeas petition be DISMISSED WITH PREJUDICE. It is further RECOMMENDED that a certificate of appealability be denied.[4]

IT IS SO RECOMMENDED.

s/Bruce Howe Hendricks
United States Magistrate Judge

May 21, 2012
Charleston, South Carolina

**The Petitioner's attention is directed to the important notice on the next page.**

---

[4]A certificate of appealability "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A prisoner satisfies this standard by demonstrating that reasonable jurists would find the district court's assessment of his constitutional claims is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. See Miller-El v. Cockrell, 537 U.S. 322, 327 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000); Rose v. Lee, 252 F.3d 676, 683-85 (4th Cir. 2001). In this case, the undersigned recommends concluding that the standard for the issuance of a certificate of appealability has not been met.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).